**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1072-17T4

STATE OF NEW JERSEY,

     Plaintiff-Respondent,

v.

CARLOS SIERRA, a/k/a
JOSE RAMIREZ,

     Defendant-Appellant.

_____

Submitted May 14, 2019 – Decided June 28, 2019

Before Judges Yannotti and Gilson.

On appeal from the Superior Court of New Jersey, Law Division, Bergen County, Indictment No. 10-09-1596.

Joseph E. Krakora, Public Defender, attorney for appellant (David J. Reich, Designated Counsel, on the briefs).

Mark Musella, Bergen County Prosecutor, attorney for respondent (William P. Miller, Assistant Prosecutor, of counsel and on the brief; Catherine A. Foddai, Legal Assistant, on the brief).

PER CURIAM

Defendant Carlos Sierra appeals from an August 18, 2017 order denying his petition for post-conviction relief (PCR) and a motion for a new trial based on newly discovered evidence. Defendant also appeals from a July 26, 2018 order denying his request for reconsideration for a new trial following a remand, discovery, and supplemental proceedings. Having reviewed defendant's contentions in light of the record and law, we affirm.

I.

On May 15, 2010, D.M.[1] was assaulted and robbed. Defendant was indicted for six crimes related to that assault and robbery. Those charges included conspiracy to commit first-degree robbery, N.J.S.A. 2C:5-2 and N.J.S.A. 2C:15-1; first-degree kidnapping, N.J.S.A. 2C:13-1(b)(2); and second-degree aggravated assault, N.J.S.A. 2C:12-1(b)(1).

In July 2011, a jury acquitted defendant of all of the indicted charges, but convicted him of lesser-included offenses. Thus, defendant was convicted of conspiracy to commit second-degree robbery, N.J.S.A. 2C:5-2 and N.J.S.A. 2C:15-1; and two disorderly persons offenses of false imprisonment, N.J.S.A. 2C:13-3, and simple assault, N.J.S.A. 2C:12-1(a)(1).

---

[1] We use initials for the victim and certain witnesses to protect their privacy interests.

A-1072-17T4

Later that year, in October 2011, defendant was sentenced to an aggregate term of nine-and-one-half years in prison with a period of parole ineligibility. Specifically, defendant was sentenced as follows: (1) on the conviction of second-degree conspiracy, he was sentenced to nine years in prison subject to the No Early Release Act (NERA), N.J.S.A. 2C:43-7.2; (2) on the conviction for simple assault, he was sentenced to a consecutive period of incarceration for six months; and (3) on the conviction for false imprisonment, he was sentenced to a concurrent period of incarceration for six months.

Defendant appealed his convictions and sentence. In his direct appeal, defendant contended, among other things, that the trial court committed reversible error in not instructing the jury on the lesser-included charge of conspiracy to commit theft. Defendant also argued that his sentence was excessive. We rejected defendant's arguments and affirmed his convictions and sentence for second-degree conspiracy and false imprisonment. We vacated his conviction and sentence for simple assault and remanded so that the simple assault conviction could be merged with the conviction for conspiracy to commit robbery. State v. Sierra, No. A-2465-11 (App. Div. Feb. 12, 2014). The Supreme Court denied certification. State v. Sierra, 220 N.J. 99 (2014).

A-1072-17T4

On September 14, 2016, defendant filed a petition for PCR. Thereafter, he supplemented his petition with the assistance of his assigned PCR counsel. Defendant argued that he should be given a new trial because Detective Sergeant Eric Reamy, who testified against defendant at his trial, had engaged in criminal activity unrelated to defendant's convictions. Defendant only learned of that criminal activity after his trial was completed and he argued that, had he known of the criminal activity, that information could have been used to undercut Reamy's credibility. Defendant also argued that his trial counsel had been ineffective in not requesting a jury charge on the lesser-included offense of conspiracy to commit theft.

The PCR court denied defendant's petition in an order entered on August 18, 2017. The PCR court held that defendant's arguments about the jury instruction were procedurally barred by his direct appeal. The court also reasoned that defendant could not satisfy the two-prong test to establish ineffective assistance of counsel under Strickland v. Washington, 466 U.S. 668 (1984). Finally, the PCR court denied defendant's motion for a new trial.

Defendant appealed from that order. In April 2018, defendant filed a motion for a remand to supplement the record with evidence concerning Reamy's criminal activities. We granted that motion.

4

On remand, the PCR court allowed defendant to conduct discovery and to supplement the record. The court then heard arguments on a motion for reconsideration focused on whether defendant should receive a new trial because of the newly discovered evidence concerning criminal activity by Reamy. On July 26, 2018, the PCR court denied defendant's request for reconsideration. The PCR court explained the reasons for its ruling in a sixteen-page written opinion.

In its opinion, the PCR court stated that it had reviewed the trial transcripts and information concerning Reamy's criminal activities. Namely, in March 2016, Reamy had pled guilty to two counts of second-degree endangering the welfare of a child, N.J.S.A. 2C:24-4(a)(1), and third-degree theft by selling firearms, which properly belonged to or were in the custody of the Borough of Glen Rock, N.J.S.A. 2C:20-9. Those convictions were based on activities Reamy had engaged in between 2011 and 2015. The PCR court noted, however, that Reamy was also alleged to have sold firearms dating back to 2008.

The PCR court found that the evidence concerning Reamy was material and newly discovered. The court found, however, that the evidence concerning Reamy's illegal activities would not have been of the sort that would probably

A-1072-17T4

change the jury's verdict if a new trial were granted. Thus, the court denied defendant's request for reconsideration of his motion for a new trial.

In our prior opinion, we described the facts that gave rise to defendant's convictions. Accordingly, we need only summarize the facts and procedural history relevant to defendant's petition for PCR and his arguments for a new trial.

D.M. had placed a notice on Craigslist seeking to meet an interested man. In response, on May 15, 2010, D.M. received a call from a man who stated that he wanted to come meet him. D.M. gave that man his address and told him to come to his home after 11 p.m. that night. When D.M. opened his door to meet the man, the man came in and pushed D.M. down the basement stairs. Thereafter, D.M. was assaulted and robbed.

The State's theory at trial was that defendant had assaulted and robbed D.M. in revenge for a fraudulent scheme that had been perpetrated on defendant's girlfriend, V.S. D.M. had previously been in a twenty-year relationship with F.C. D.M. had allowed F.C. to use checks with a false business name and D.M.'s address. F.C. tried to defraud V.S. out of several thousand dollars by using unfunded checks with D.M. as the signor of the checks. Thereafter, defendant made several efforts to force D.M. to pay for the fraud.

A-1072-17T4

The State contended that in May 2010, defendant conspired to assault and rob D.M. As part of its investigation, the police learned that D.M. had been called on a cell phone used by C.C. When the police questioned C.C., he ultimately confessed to participating in the robbery and assault and he agreed to testify against defendant.

In his testimony, C.C. stated that he lent his cell phone to defendant on May 15, 2010, and defendant used that cell phone to arrange to come to D.M.'s home. C.C. also testified that he, defendant, and another individual known as "E." drove to D.M.'s home. As they were driving, defendant told C.C. that he was going to D.M.'s home to beat him up and get money. When they arrived, defendant and E. went inside D.M.'s home while C.C. waited outside. Defendant and E. later came outside and defendant told C.C. that he had punched the guy and got money.

The police also questioned and obtained statements from defendant. In a formal statement, defendant claimed that he had been in Pennsylvania at the time of the robbery. After his alibi was disproved, the police arrested defendant. Defendant then made oral statements to Reamy in which he claimed that he had driven the two other men to D.M.'s house, but remained in the car while the

A-1072-17T4

other two went into the house and assaulted D.M. In that regard, defendant claimed he was "there," but had nothing to do with assaulting D.M.

At trial, the State presented evidence of the calls allegedly made to D.M. by defendant using C.C.'s cell phone. The State also presented evidence that defendant's cell phone had been used to make several calls from the vicinity near D.M.'s home on the day of the assault and robbery. In addition, the State called Reamy to testify concerning the admissions allegedly made by defendant.

Defendant elected to testify at trial. He admitted to lying about being in Pennsylvania. He testified that on May 15, 2010, E., joined by C.C., gave him a ride to pick up diapers at a friend's house in Fair Lawn. He also testified that he remained at the friend's house from 11 p.m. until about 12 a.m., and that E. and C.C. then picked him up and gave him a ride home. Finally, he testified that when he was arrested, he told the police that he went on a ride to get diapers and that when he was being driven home he saw that C.C. had blood on his shoes.

## II.

On this appeal, defendant challenges both the denial of his petition for PCR and the denial of his motion for a new trial. Specifically, defendant articulates his arguments as follows:

> POINT I: THE PCR COURT ERRED IN CONCLUDING THE NEWLY DISCOVERED

A-1072-17T4

EVIDENCE THAT SERGEANT REAMY WAS HIMSELF ENGAGED IN CRIMINAL ACTIVITY AT THE TIME HE INVESTIGATED THE CRIME AND TESTIFIED BEFORE THE JURY AGAINST [DEFENDANT] WAS INSUFFICIENT TO ENTITLE [DEFENDANT] TO A NEW TRIAL

POINT II: THE PCR COURT ERRED IN DENYING [DEFENDANT] AN EVIDENTIARY HEARING CONCERNING HIS CLAIM TRIAL COUNSEL WAS INEFFECTIVE IN FAILING TO REQUEST A JURY CHARGE FOR THE LESSER-INCLUDED OFFENSE OF CONSPIRACY TO COMMIT THEFT

Having conducted a de novo review of the record, we reject both of these arguments. The newly discovered evidence concerning the illegal activity by Reamy is not the sort of evidence "that would probably change the jury's verdict if a new trial were granted." State v. Nash, 212 N.J. 518, 549 (2013) (quoting State v. Ways, 180 N.J. 171, 189 (2004)). Defendant also failed to present a prima facie showing that his trial counsel was ineffective in failing to request a lesser-included charge of conspiracy to commit theft.

A.    The New Evidence Concerning Reamy

Newly discovered evidence is sufficient to warrant a new trial if it is "(1) material to the issue and not merely cumulative or impeaching or contradictory; (2) discovered since the trial and not discoverable by reasonable diligence beforehand; and (3) of the sort that would probably change the jury's verdict if

9

a new trial were granted." Ibid. (quoting State v. Carter, 85 N.J. 300, 314 (1981)). A defendant must satisfy all three prongs to gain relief. Ways, 180 N.J. at 187 (citing Carter, 85 N.J. at 314).

"Under prong one of the Carter test, '[m]aterial evidence is any evidence that would have some bearing on the claims being advanced,' and includes evidence that supports a general denial of guilt." Nash, 212 N.J. at 549 (alteration in original) (quoting Ways, 180 N.J. at 188). The central focus of the analysis is on the nature of the evidence presented. Ways, 180 N.J. at 191-92. In that regard, prongs one and three of the test are "inextricably intertwined." Nash, 212 N.J. at 549. Evidence that is merely cumulative, impeaching, or contradictory, "is not of great significance and would probably not alter the outcome of a verdict." Ways, 180 N.J. at 189. In contrast, "[m]aterial evidence is any evidence that would 'have some bearing on the claims being advanced.'" Id. at 188 (quoting State v. Henries, 306 N.J. Super. 512, 531 (App. Div. 1997)).

"Prong two requires that 'the new evidence must have been discovered after completion of trial and must not have been discoverable earlier through the exercise of reasonable diligence.'" Nash, 212 N.J. 550 (quoting Ways, 180 N.J. at 192). In making that evaluation, a court should consider the strategy decisions

10

of trial counsel. Ways, 180 N.J. at 192 ("A defendant is not entitled to benefit from a strategic decision to withhold evidence.").

Here, the PCR court determined that the information concerning Reamy's criminal activity was material and newly discovered. Defendant argues that the PCR court erred, however, in concluding that the evidence would not have been likely to change the jury's verdict. In that regard, defendant contends that Reamy's unimpeached trial testimony was critical evidence and helped to support C.C.'s testimony which, on its own, would have been "highly suspect."

We disagree. A thorough review of the evidence presented at trial establishes that Reamy's testimony was not the critical evidence against defendant. Instead, the testimony of C.C. was the foundation on which the State rested its case. C.C. gave direct evidence that defendant conspired and committed the assault and robbery of D.M. There was also evidence supporting C.C.'s testimony and independently supporting defendant's convictions. In that regard, the State introduced records concerning the use of defendant's and C.C.'s cell phones and where calls had been made during the night of the assault and robbery. Defendant's credibility was also called into question because he had originally claimed that he was in Pennsylvania. At trial, he admitted that his alibi was false and he claimed instead that he visited a friend in Fair Lawn.

11

We note that the criminal activity in which Reamy was engaged was not directly related to his testimony against Sierra. As pointed out, Reamy pled guilty to two counts of endangering the welfare of a child and one count of theft. His guilty pleas were based on activities that took place between 2011 and 2015, which is after he had investigated the charges against defendant. Specifically, the charges were based on allegations that Reamy had exchanged sexual text and photo messages with underage girls, and had engaged in theft by selling firearms that belonged to or were in the custody of the Glen Rock Police Department.

Thus, had Reamy been confronted with this information, it would have gone to his credibility in general because there was no evidence that Reamy had falsely testified against defendant or other defendants. Consequently, in considering the newly discovered evidence, it must be weighed against the other direct evidence against defendant and, on that scale, the evidence was not the sort that would probably change the jury's verdict if a new trial was granted.

In short, having reviewed the trial and PCR records, we agree with the PCR court that the newly discovered evidence concerning criminal activity by Reamy was not the sort of evidence that would have changed the jury's verdict if a new trial was granted. We, therefore, affirm the denial of the motion for a new trial.

B.  The Jury Charge for the Lesser-Included Offense of Conspiracy to Commit Theft

Defendant also argues that the PCR court erred in denying his petition concerning the ineffective assistance of his trial counsel. In that regard, defendant contends that trial counsel's failure to request a jury charge on the lesser-included offense of conspiracy to commit theft constituted ineffective assistance of counsel.

On his direct appeal, defendant had argued that the trial judge committed plain error by not sua sponte giving a lesser-included offense instruction on conspiracy to commit theft. We rejected that argument, and pointed out that neither party claimed that there had been a conspiracy to commit theft by unlawful taking. Instead, the State's evidence showed that defendant conspired with C.C. and E. to get money from D.M. by inflicting bodily injury or using force on D.M. In contrast, defendant's testimony was that he was not involved in any conspiracy and he had merely taken an innocent ride to get diapers. Accordingly, we concluded that the evidence did not show a conspiracy to commit theft. State v. Sierra, No. A-2465-11 (App. Div. Feb. 12, 2014) (slip op. at 8-9).

The PCR court reasoned that defendant's ineffective assistance of counsel argument was both procedurally barred and failed to establish a prima facie

13

showing of ineffective assistance of counsel. We need not reach the procedural issue, because we conclude that defendant failed to make a prima facie showing of prejudice.

A defendant is entitled to an evidentiary hearing on a PCR petition if he or she establishes a prima facie showing in support of the petition. R. 3:22-10(b). To establish a claim of ineffective assistance of counsel, a defendant must satisfy a two-part test: (1) "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment[,]" and (2) "the deficient performance prejudiced the defense." Strickland, 466 U.S. at 687; accord State v. Fritz, 105 N.J. 42, 58 (1987) (adopting the Strickland test).

In rejecting defendant's direct appeal, we noted that defendant's testimony at trial was that he was not involved in the assault and robbery at all. We also concluded that the evidence did not show a conspiracy to commit theft. Consequently, defendant did not show that he suffered any prejudice by his trial counsel's failure to request a jury charge on the lesser-included offense of conspiracy to commit theft. The jury obviously rejected defendant's testimony that he was not involved in the conspiracy to commit robbery. The only testimony at trial was that defendant conspired with C.C. and E. to take money

from D.M. by inflicting bodily injury or using force on D.M. Thus, defendant did not present a prima facie showing of prejudice to satisfy the second part of the <u>Strickland</u> test.

Affirmed.

I hereby certify that the foregoing
is a true copy of the original on
file in my office.

CLERK OF THE APPELLATE DIVISION

A-1072-17T4